UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NICOLAS WEBB,

    Plaintiff,

    v.      CAUSE NO. 3:21-CV-486-DRL-MGG

WEXFORD HEALTH, et al.,

    Defendants.

OPINION AND ORDER

Nicolas Webb, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 2.) Pursuant to 28 U.S.C. § 1915A, the court must screen the complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court bears in mind that "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citation omitted).

Mr. Webb alleges that on August 16, 2020, an incident occurred at Miami Correctional Facility (MCF) when he was returning to his cell from the showers. He claims that as he was entering his cell, Officer Bass (first name unknown) "pushed the control" for his cell door to close. He tried to hurry through the door, but he had his

shower supplies in his right hand, and the cell door closed on his hand, causing it to start "pouring blood." Officer Bass called an emergency medical signal, but medical staff delayed in responding, so Mr. Webb walked to the medical unit on his own. He claims he was losing a lot of blood and felt like he might "pass out." When he arrived in the medical unit, medical staff could not stop the bleeding, so he was sent to an outside hospital for treatment. He claims that after he returned from the hospital, he was supposed to get daily dressing changes of the wound, but he did not, and instead medical staff left him "in the same bloody, dirty dressing for over a week." There was also a one-week delay in getting his sutures removed. He claims that Officer Bass finally walked him over to the medical unit so that the sutures could be removed. Nurse Ashley (last name unknown) removed the sutures, but he claims she did a poor job, causing him severe pain and the wound to start bleeding again. He claims she also did not give him any pain medications. He claims there was a delay in seeing a doctor due to COVID-related restrictions at his facility. It appears from the complaint that he was offered a doctor visit during this period, but refused to leave his cell because he was in fear of catching COVID.

On September 28, 2020, he was seen by Dr. Masandia (first name unknown), who suspected that he had a "blood build up" in his palm. As soon as the doctor started to apply pressure to his palm, the wound started "shooting blood everywhere." He was again taken to an outside hospital for treatment. It was discovered that he had an aneurism in his hand. The outside doctor prescribed a narcotic pain medication, but he claims medical staff refused to give it to him when he returned to the prison. Instead, he

2

was given Tylenol 3. He saw an outside hand specialist on October 13, 2020, who recommended surgery. He underwent hand surgery on November 13, 2020. After returning to the prison, he claims he was again denied the narcotic pain medication that had been prescribed for him by the hand specialist even though the pain was "horrific." He claims the specialist told him there was permanent nerve and tissue damage to his thumb due to the delay in treatment. He further claims that he has ongoing pain from this injury. As a result of these events, he sues "Wexford Health," the Indiana Department of Correction, Officer Bass, Dr. Masandia, and Nurse Ashley, seeking money damages and other relief.

Inmates are entitled to constitutionally adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Thus, "a doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. *Berry*, 604 F.3d at 441.

Mr. Webb has alleged a plausible Eighth Amendment claim for monetary damages against Nurse Ashley and Dr. Masandia. He claims that Nurse Ashley did a poor job removing his sutures, causing him pain and exacerbating his injury—that isn't deliberate indifference. But he also says she failed to give him any pain medications. It is not clear that she had the ability to prescribe pain medications, but the complaint can be read to allege she did not take appropriate steps to have him seen by a doctor.

His complaint can also be read to allege that Dr. Masandia did not give him proper pain medication or take steps to refer him to an outside specialist until a few months after his injury, which allegedly caused permanent damage to his thumb. It is not entirely clear from the complaint whether Dr. Masandia was the cause of the delay, or if it was due to COVID-related restrictions and Mr. Webb's own refusal to leave his cell for an

4

appointment. But because the court must construe all inferences in his favor at this stage, he will be permitted to proceed past the pleading stage against this defendant.

He also sues Officer Bass for causing his injury in the first place. Prison employees who "expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights." *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). However, "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Rather, the defendant's "state of mind must rise to the level of deliberate indifference." *Id.* "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Even giving Mr. Webb the favorable inferences to which he is entitled, there is no factual content in the complaint to plausibly suggest that the incident with the cell door was anything more than an accident. There is no basis to infer that Officer Bass intended to cause Mr. Webb harm or acted with deliberate indifference to his safety. Rather, it appears from the complaint that Officer Bass pushed the control for the cell door from some remote location, not realizing that Mr. Webb had not fully entered his cell. The complaint also makes clear that Officer Bass called for emergency medical assistance when he realized Mr. Webb had been injured. Additionally, it was Officer Bass who personally escorted Mr. Webb to the medical unit weeks later when there was a delay in

having his sutures removed. The complaint does not plausibly allege deliberate indifference by Officer Bass.

Mr. Webb also names the Indiana Department of Correction as a defendant, but this state agency has Eleventh Amendment immunity. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019). He also sues "Wexford Health," which employed medical staff at MCF at the time of these events. A private company may be held liable for constitutional violations when it performs a state function. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). There is no general supervisory liability under section 1983, and Wexford cannot be held liable solely because it employed the medical staff involved in Mr. Webb's care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a state function can also be held liable to the same extent as a state actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). *Monell* requires "a plaintiff suing a municipality or comparable entity to demonstrate that the entity's official policy . . . was the 'moving force' behind his constitutional injury." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016); *see also Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). Mr. Webb does not allege that an unconstitutional official policy or practice by Wexford caused his injury in his complaint. Rather, he describes failings by the individual medical staff who provided his care. He will not be permitted to proceed against this corporate defendant.

His complaint can also be read to seek injunctive relief related to his ongoing need for medical care, and MCF Warden William Hyatte has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate

medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Mr. Webb will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for pain medication and other medical care for his hand.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Nurse Ashley (last name unknown) and Dr. Masandia (first name unknown) in their personal capacity for monetary damages for denying him adequate treatment for his hand injury in violation of the Eighth Amendment;

(2) DIRECTS the clerk to add Warden William Hyatte as a defendant;

(3) GRANTS the plaintiff leave to proceed against Warden William Hyatte in his official capacity for injunctive relief related to his ongoing need for constitutionally adequate medical care for his hand;

(4) DISMISSES all other claims;

(5) DISMISSES Wexford Health, Indiana Department of Correction, and Officer Bass as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Ashley (last name unknown) and Dr. Masandia (first name unknown) at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden William Hyatte at Indiana Department of Correction, and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(9) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Nurse Ashley, Dr. Masandia, and Warden William Hyatte to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

July 28, 2021                                          *s/ Damon R. Leichty*
                                                      Judge, United States District Court