UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NICOLAS WEBB, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-486-MGG |
| MASANDIA, et al., | |
| Defendants. | |

OPINION AND ORDER

Nicolas Webb, a prisoner without a lawyer, is proceeding in this case against Nurse Ashley Wilson and Dr. Noe Marandet "in their personal capacity for monetary damages for denying him adequate treatment for his hand injury in violation of the Eighth Amendment[.]" ECF 7 at 7. On August 4, 2023, Nurse Wilson and Dr. Marandet filed a motion for summary judgment. ECF 91. With the motion, they provided Webb the notice required by N.D. Ind. L.R. 56-1(f). ECF 94. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a Response to Statement of Material Facts, which includes a citation to evidence supporting each dispute of fact. This deadline passed over three months ago, but Webb has not responded. Therefore the court will now rule on the defendants' summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

The defendants provide an affidavit from Dr. Marandet (ECF 93-2), an affidavit from Nurse Wilson (ECF 93-3), and Webb's medical records (ECF 93-1), which show the following facts:[1] On August 16, 2020, Webb's hand was lacerated by a sliding door while incarcerated at Miami Correctional Facility ("MCF"). ECF 93-2 at 4. He was transported to the hospital, where an x-ray was performed which showed no evidence of a fracture, bone lesion, or any other abnormality. *Id.* A doctor sutured the laceration and ordered Tylenol. *Id.* at 5. Webb returned to MCF and met with a nurse, who provided Tylenol as requested and instructed him to return to the medical unit for any worsening symptoms. *Id.* at 5-6.

On September 3, 2020, Webb was seen in the medical unit after he jumped off a top bunk and ruptured the sutured area of his hand, causing the site to burst open and bleed a lot. ECF 93-2 at 6; ECF 93-1 at 44-45. Dr. Kuenzli was contacted and ordered "daily treatments" twice per day and to apply ice to the hand. *Id.* A nurse wrapped Webb's hand and told him to contact the medical unit if it worsened. *Id.*

On September 16, 2020, Webb was seen by a nurse regarding his hand, and it was noted the hand was swollen. ECF 93-1 at 46-47. The nurse wrapped his hand in gauze, encouraged him to move it frequently, and noted she would contact another nurse about providing antibiotics. *Id.* On September 17, 2020, Nurse Wilson attempted to get Webb to the medical unit for a provider assessment but Webb refused to come. *Id.* at 48-

---

[1] Because Webb did not respond to the defendants' summary judgment motion, the Court accepts the defendants' attestations and the contents of Webb's medical records as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .")

3

49. Dr. Marandet was notified and an order for Keflex was entered. *Id.* On September 18, 2020, Webb was seen by a nurse and encouraged to take oral antibiotics as ordered. *Id.* at 50.

On September 27, 2020, Webb was seen by Nurse Wilson and complained of increased pain in his left hand. ECF 93-3 at 7. Nurse Wilson noted the laceration on his palm had healed but he had a hematoma with a pinpoint wound that oozed blood with pressure. *Id.* Webb informed Nurse Wilson he'd stopped taking his prescribed Keflex because it caused diarrhea, and he was educated that diarrhea was a common side effect of antibiotics and he was going to have to take some form of antibiotics for the infection to resolve. *Id.* at 7-8. Webb received an order for Cleocin and Tylenol. *Id.* at 8. The next day, Webb saw Dr. Marandet for a follow-up visit. ECF 93-2 at 8. Dr. Marandet evacuated his hematoma, found no evidence of infection, and ordered he receive daily dressing changes for the next 10 days. *Id.* Webb was later transported back to the hospital where he received another x-ray, which had findings consistent with a pseudoaneurysm. *Id.* at 8-10; ECF 93-1 at 54-64. He received orders for Cephalexin and Hydrocodone-acetaminophen and was continued on Cleocin, and it was recommended he follow up with a plastic surgeon. *Id*.

On October 21, 2020, Webb was seen by a specialist to be assessed for hand surgery. ECF 93-1 at 71-73; ECF 93-2 at 10-12. The specialist recommended surgical drainage of the hematoma and ligation of the pseudoaneurysm. *Id*. On November 3, 2020, an outpatient request for surgical drainage of the hematoma and ligation of the pseudoaneurysm was approved. ECF 93-2 at 13. The procedure was performed on

November 13, 2020. *Id.* Upon returning to MCF, Webb saw Nurse Wilson and denied any pain or injuries. *Id.*; ECF 93-1 at 80-94. He was admitted to the infirmary and prescribed Norco. *Id.* In the following days, he was given pain medication and received routine care, including keeping his dressing clean, dry, and intact. ECF 93-2 at 13-15.

Over the next month, Dr. Marandet and a skilled care nurse regularly examined Webb's hand and did not find any signs of infection. ECF 93-2 at 13-15. On December 16, 2020, Webb had a follow-up with his plastic surgeon and it was noted he was doing well. *Id.* at 15. He had another follow-up on January 13, 2021, and was ordered to perform left hand therapy on his own and use his hand freely without restriction. *Id.*

Dr. Marandet attests MCF's medical staff provided reasonable and appropriate treatment for Webb's hand injury by providing appropriate wound care, providing antibiotics for his infections, sending him to the hospital and outside specialists, and following the recommendations of the hospital physicians and specialists. ECF 93-2 at 16-20. Webb's medical records support these attestations, showing that MCF's medical staff sent Webb to the hospital for x-rays, regularly treated his wound, prescribed antibiotics when he showed signs of infection, referred him to a specialist for hand surgery, and followed all recommendations from the specialist. Based on the evidence in the record, no reasonable jury could conclude the defendants provided Webb constitutionally inadequate treatment for his hand injury. *See Walker v. Benjamin*, 293 F.3d 1030, 1038-39 (7th Cir. 2002) (physician was not deliberately indifferent for treating hand injury by ordering x-rays and providing antibiotics, a pain reliever, and an ace bandage). Summary judgment is therefore warranted in favor of the defendants.

5

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 91); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Nicolas Webb and to close this case.

SO ORDERED on December 27, 2023

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge
